**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **ANNAMARIE MURPHY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:22-cv-00047** |
| **v.** | ) | **Judge Frensley** |
| | ) | |
| **MARTIN J. O'MALLEY,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

This action is before the Court pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security denying Plaintiff Annamarie Murphy Disability

Insurance Benefits (DIB) under Title II of the Social Security Act (Act). The parties have consented

to proceed before a magistrate judge pursuant to 28 U.S.C. 636(c). Pending before the Court is

Plaintiff's Motion for Judgment on the Record. Docket No. 15. The motion is fully briefed and

ready for disposition.

For the reasons stated below, Plaintiff's Motion for Judgment on the Record will be

**DENIED**, and the decision of the Commissioner will be **AFFIRMED.**

## I.    INTRODUCTION

Plaintiff filed her application for DIB on January 26, 2016, alleging she became disabled on

August 19, 2014, due to Crohn's Disease, rheumatoid arthritis in her right arm, right arm tendonitis,

nerve damage, fibromyalgia, and anxiety. Docket No. 8, TR. pp. 541-553, 615. Her application was

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley shall be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit. No further action needs to be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

denied initially and on reconsideration. (TR. 295, 302-03.) In June 2018, following a hearing, an ALJ found Plaintiff was not under a disability as defined under the Act. (TR. 242-53.) The Appeals Council remanded to a new ALJ. (TR. 261.) In June 2020, the new ALJ found Plaintiff was not disabled. (TR. 267-76.)

In April 2021, the Appeals Council remanded for further consideration of plaintiff's mental impairments with documentation of the Psychiatric Review Technique (PRT). (TR. 287.) On August 18, 2021, Plaintiff and vocational expert (VE) John Black appeared and testified at a telephonic hearing conducted by Administrative Law Judge Kerry Morgan. (TR. 16, 49.)

On September 7, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (TR. 16-36.) Specifically, the ALJ found the following. Plaintiff had not engaged in substantial gainful activity from August 19, 2014, her alleged onset date, through March 31, 2018, her date last insured. (TR. 19.) Plaintiff had the following severe impairments: degenerative joint disease of the right wrist, fibromyalgia, inflammatory bowel disease, neuropathy, cervicalgia, chronic pain syndrome, complex regional pain syndrome, and adult attention deficit hyperactivity disorder (ADHD). (TR. 19.) She did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR. 20.)

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined under the regulations with the following limitations:

> [S]he could only frequently push and pull with the right upper extremity; frequently climb ramps and stairs, balance, or kneel; occasionally stoop or crouch, and can never crawl or climb ladders, ropes, and scaffolds. She could frequently use the bilateral upper extremities for overhead reaching and frequently use the right upper extremity for handling. She could understand, remember, and complete simple and detailed instructions and tasks. She could maintain attention, concentration, persistence, or pace for simple and detailed instructions and tasks. She could tolerate frequent interaction with the public and occasional change in job duties.

2

(TR. 20-21.)

Relying on VE testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a general clerk and an informal waitress. (TR. 34.) Therefore, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR. 36.)

On September 9, 2022, the Appeals Council denied Plaintiff's request for review. (TR. 1-6.) Accordingly, the ALJ's September 7, 2021 decision stands as the final decision of the Commissioner subject to this Court's review.

## II. REVIEW OF THE ADMINISTRATIVE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, this Court will discuss only the record evidence relevant to Plaintiff's appeal.

## III. LEGAL STANDARDS

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. , 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

3

adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work

experience.  *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

## B.     Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the listed impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e. g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as the grid, but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

C.     **Plaintiff's Statement of Errors**

Plaintiff contends the ALJ erred (1) in failing to properly perform the Psychiatric Review Technique, and (2) in failing to properly formulate her RFC because it does not account for her mental limitations. Docket No. 15-1, pp. 5, 8.  The Court disagrees.

6

**Psychiatric Review Technique**

Plaintiff first argues the ALJ erred in failing to properly perform the Psychiatric Review Technique. She argues the ALJ failed to explain how she arrived at her findings. She asserts an explanation is required under the applicable regulation, as well as from the instructions from the Appeals Council to "[f]urther evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520(a)(c)." Docket No. 8, TR. 16.

This Court concludes the ALJ properly evaluated Plaintiff's mental impairments in accordance with the regulations and instructions from the Appeals Council. In the decision, the ALJ found at step two that Plaintiff had a severe mental impairment, adult ADHD. (TR. 19.) The ALJ found that it imposed moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 20.)

The regulations direct the Commissioner to rate the degree of functional limitations resulting from the impairments. 20 C.F.R. § 404.1520a(b). The Commissioner will rate the claimant's limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c). The ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 20.) Therefore, the ALJ evaluated Plaintiff's mental impairment in a manner that was consistent with the regulations.

Plaintiff claims the ALJ did not comply with the Appeals Council's instructions to further

consider Plaintiff's mental impairments. (TR. 287.) The Court finds otherwise. In an earlier decision before a different ALJ, the ALJ found that Plaintiff had a severe mental impairment but did not make factual findings regarding the four mental domains. (TR. 267-76.) The Appeals Council remanded to the ALJ in this case for further consideration of Plaintiff's mental impairments with documentation of the Psychiatric Review Technique. (TR. 285-89.)

In assessing Plaintiff's mental impairment, the ALJ here considered the medical opinions, Plaintiff's medical treatment, the clinical findings, and her activities of daily living. (TR. 20, 25-28, 34); 20 C.F.R. § 404.1520a(e)(4). The Court's review is not limited to the single paragraph cited by Plaintiff, as plaintiff suggests, but should consider other parts of the ALJ's decision. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (endorsing the practice of searching the ALJ's entire decision for statements supporting step three analysis).

The ALJ weighed the opinions of the state agency medical consultants. (TR. 34, 210-11, 215-16, 227-28, 232-34). In March 2016, Robert de la Torre, Psy.D., reviewed the record and concluded that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. (TR. 210). Based on the moderate limitations, Dr. de la Torre opined that Plaintiff could sustain concentration, persistence, and pace for simple and detailed tasks and set realistic goals and adapt to gradual or infrequent workplace changes. (TR. 216).

In June 2016, Peggy Elam, Ph.D., also found moderate limitations in concentrating, persisting, and maintaining pace. (TR. 227.) She opined that Plaintiff could understand and remember simple and higher-level detailed tasks; sustain concentration, persistence, and pace for simple and detailed tasks with customary breaks despite occasional signs and symptoms; interact appropriately with the public, co-workers, and supervisors; and set realistic goals and adapt to gradual or infrequent workplace changes. (TR. 233-34.)

8

The ALJ found both opinions were entitled to partial weight. (TR. 34). The ALJ found the opinions "well supported" and "explained via references to the record." (TR. 34.) The ALJ also found the opinions "were generally consistent with the record as a whole." (TR. 34.) However, viewing the evidence in a light most favorable to Plaintiff, the ALJ found the opinions "overly optimistic in terms of social capacity." (TR. 34.) Therefore, consistent with the state agency medical consultants' opinions, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. (TR. 20.) As discussed below, the ALJ incorporated the limitations from the state agency medical consultants' opinions into Plaintiff's RFC.

The ALJ also considered Plaintiff's limited conservative medical treatment, including that she had no past history of psychiatric treatment or special education for her ADHD. (TR. 26-27.) *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (modest treatment is inconsistent with a finding of total disability). In September 2015, one year after her alleged onset date, Plaintiff was instructed to follow up with her primary care provider for referral to a psychiatrist due to situational stressors. (TR. 895.) Plaintiff did not follow up with a psychiatrist at that time. However, in March 2016, Plaintiff saw Mistie D. Germek, Ph.D., a pain specialist, regarding her pain medications. (TR. 945.) Plaintiff reported that she had been prescribed Bupronion, an anti-depressant, for her ADHD, but that she did not like it. (TR. 946.) The medication was subsequently stopped. (TR. 27, 980.) At that time, Plaintiff's primary care provider instructed her to return if her attention problems worsened, although the record evidence reveals she did not seek further treatment for concentration problems. (TR. 980.) Based on the above, the Court concludes the ALJ properly considered Plaintiff's limited and conservative mental health treatment in evaluating Plaintiff's mental impairment. (TR. 26-27.)

The ALJ also considered Plaintiff's clinical findings. (TR. 26-27.) The ALJ noted that

inconsistent with disabling limitations in concentration, Plaintiff exhibited normal attention and concentration. (TR. 875, 898, 912, 920.) She successfully completed serial 3 testing, a common cognitive test that involves a sequential task. (TR. 946.) Plaintiff appeared alert and oriented. (TR. 837, 875, 912, 920, 933, 937, 946, 951, 956, 980, 1027, 1138, 1142, 1146, 1165, 1169, 1172, 1175, 1178, 1181, 1184, 1187, 1190, 1195, 1198, 1202, 1208, 1290, 1580.) She was cooperative. (TR. 837, 951, 956, 1165, 1169, 1172, 1175, 1178, 1181, 1184, 1187, 1190, 1195, 1198, 1202, 1208.) Plaintiff exhibited a normal mood and affect. (Tr. 837, 875, 898, 912, 951, 957, 961, 1153, 1156, 1160, 1163, 1166, 1169, 1173, 1176, 1179, 1182, 1185, 1188, 1191, 1195, 1199, 1202, 1208, 1447.) She retained intact memory, insight, and judgment. (Tr. 912, 920, 961.) The Court agrees with the ALJ that the clinical findings did not support greater than moderate limitations. (TR. 26-27.)

Finally, the ALJ considered Plaintiff's activities of daily living. (TR. 25-28, 625-27, 947.) Although Plaintiff reported some difficulty concentrating and completing tasks, she reported that her impairment did not cause significant impairment in her ability to function. (TR. 27, 946.) She was able to care for her children "basically on her own." (TR. 961.) The ALJ noted that childcare is mentally challenging and inconsistent with disabling mental impairments. (TR. 25.) *Cf. Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("The ALJ also properly took into account Moore's daily activities, which included caring for two school-aged children and performing household chores."); *Paulin v. Astrue*, 657 F.Supp.2d 939, 950 (M.D. Tenn. 2009) (daily activities included caregiving for grandchildren). Based on the above, the Court concludes the ALJ properly considered Plaintiff's daily activities in evaluating Plaintiff's mental impairments.

In summary, the Court finds no error. The ALJ properly found that Plaintiff's mental impairments caused moderate limitations in the four domains of functioning. The ALJ's finding is consistent with the medical opinions, Plaintiff's medical treatment, the clinical findings, and her

activities of daily living. (Tr. 25-28, 34.) Accordingly, substantial evidence on the record as a whole supports the ALJ's evaluation of Plaintiff's mental impairments.

**Residual Functional Capacity (RFC)**

Plaintiff next argues the ALJ erred in failing to account for her mental limitations in her RFC because it does not account for her mental limitations. She is incorrect.

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ '"need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and

explain the resolution of any inconsistencies in the record."' Id. (citations omitted).

The ALJ's decision demonstrates that the ALJ evaluated Plaintiff's mental impairments and incorporated the supported limitations into her RFC. As discussed above, the ALJ considered the medical opinions and gave them partial weight. (TR. 34.) The ALJ also discussed Plaintiff's conservative mental health treatment, the clinical findings, and her activities of daily living. (TR. 25-28.)

The ALJ articulated appropriate bases for the weight given the record evidence in formulating her RFC. Based on the moderate limitations, the ALJ found in her RFC that Plaintiff retained the ability to perform simple and detailed tasks, have frequent interaction with the public, and tolerate occasional job duty changes. (TR. 21.)

Plaintiff contends that the ALJ did not account for the moderate limitations in concentration, persisting, and maintaining pace with a limitation to detailed tasks with occasional job duty changes. As an initial matter, the Sixth Circuit has recognized the distinction between the assessment of mental impairments for purposes of determining severity and the evaluation of the effects of the impairments for purposes of the RFC finding. *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. Jan. 31, 2020) ("An ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a 'residual functional capacity' analysis at steps four and five."). Second, RFC is "the most [a claimant] can still do despite [her] limitations." See 20 C.F.R. § 404.1545 (residual functional capacity). Because the RFC is defined this way, an ALJ's finding that an individual has the ability to perform simple and detailed tasks means that the simple and detailed tasks can be performed without any limitations not specified in the RFC. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) ("In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her

moderate limitations.") (distinguishing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010)). Here, the ALJ's RFC represents the moderate limitations identified by the ALJ.

As noted above, the ALJ gave partial weight to the opinions Drs. de la Torre and Elam, who opined Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. (TR. 34, 210, 227.) Despite moderate limitations, they believed that Plaintiff could perform simple and detailed tasks. (TR. 216, 233). The ALJ incorporated that limitation into Plaintiff's RFC. (TR. 21.) Plaintiff has presented no record evidence showing she is *incapable* of simple and detailed tasks to contradict the ALJ's RFC finding.

To the extent Plaintiff is suggesting this is a step five case, it is not. At step four, Plaintiff must show she is unable to perform her past relevant work. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). In order to do so, Plaintiff must show that she is unable to return to her past relevant work both as she performed that work and as that work is generally performed in the national economy. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989). The vocational expert testified that a hypothetical individual with what would become Plaintiff's RFC could perform Plaintiff's past relevant work as a general clerk and an informal waitress. (Tr. 34-35, 71.) Moreover, the record evidence showed Plaintiff reported that she had the mental impairments "her whole life," and despite this, performed her past relevant work. (TR. 933.) Cf. Bowen v. Soc. Sec. Admin., 581 F. App'x 544, 545 (6th Cir. 2014) (a medical condition that was present during working years and has not significantly worsened does not support disability at the time of the ALJ's decision; substantial evidence supported the ALJ's RFC determination given that claimant performed light or medium work until her alleged onset date and that there was no credible medical evidence or testimony showing that she subsequently developed limitations precluding light work).

13

In summary, the Court concludes substantial evidence supports the ALJ's RFC finding that Plaintiff could perform a range of simple and detailed work with frequent interaction with the public and occasional job duty changes. The ALJ committed no error.

## IV.    CONCLUSION

For the reasons discussed above, this Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Record is **DENIED** (Docket No. 15), and the decision of the Commissioner is **AFFIRMED.**

A separate judgment will accompany this Memorandum and Order.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**